**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HIGHLINE SPIRITS COMPANY, LLC,

              Plaintiff,                      Case No. 1:25-cv-266

v.

VOSA SPIRITS, LLC,                Hon.

              Defendant.              /

## COMPLAINT

Plaintiff Highline Spirits Company, LLC ("Plaintiff" or "Highline") for its Complaint against Defendant Vosa Spirits, LLC ("Vosa") ("Defendant"), by and through its undersigned counsel, respectfully states as follows:

## THE PARTIES

1.  Plaintiff Highline Spirits Company, LLC, is a Michigan limited liability company located at 7200 Huron River Drive, Suite B, Dexter, Michigan 48130.

2.  Defendant Vosa Spirits, LLC is a Florida limited liability company with its principal place of business at 105 Corridor Rd., #1878, Ponte Vedra Beach, Florida 32204. Defendant licenses its Vosa trademark for use on a vodka-based canned cocktail that it markets and sells using the name HIGHLINE.

3.  Defendant are infringing Plaintiff's rights in its HIGHLINE trademark by using confusingly similar marks to mislead consumers into believing there is some affiliation, sponsorship, or connection between Plaintiff and Defendant when there is none, and by deliberately trading off the extensive goodwill that Plaintiff has developed and is continuing to develop in its well-known and highly valuable HIGHLINE mark.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction under 15 U.S.C § 1121(a) and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C § 1367, which are integral to Plaintiff's federal claims and arise from a common nucleus of operative facts. Resolving the state-law claims with the federal claims will therefore further judicial economy.

5.      This Court has personal jurisdiction over Defendant because they have the requisite minimum contacts within this State and this District; Defendant purposefully availed themselves of the privilege of conducting business in this State and this District; Defendant regularly conduct and/or solicit business within this State and this District; Defendant advertise and sell infringing products in this State and this District; and Plaintiff's causes of action arise directly from Defendant's activities in this State and this District.

6.      Venue in this Court is proper under 28 U.S.C § 1391. Defendant has transacted business in this District and have directly or indirectly committed or induced acts of trademark infringement in this district.

**FACTS GIVING RISE TO THIS ACTION**

**A.      Plaintiff And Its HIGHLINE® Trademark**

7.      Highline was founded on the principles of facing life's challenges, growing through those challenges, and maintaining integrity through it all. Those principles led to the company name, which is inspired by the Highline Trail in Glacier National Park – a famously difficult hiking trail with a spectacular payoff of amazing views. Christi Lower, the founder and owner of Highline, chose the name in part to remind herself, the company, and her family of a simple truth: you can do hard things, and hard things can lead to amazing rewards.

8.    These principles form the backbone of Highline's operational philosophy. As a woman in a male-dominated industry, Christi knew she faced an uphill battle to achieve recognition in the distilling space. She worked hard at her craft, studying and graduating from a prestigious distilling program at the University of Louisville. Combining that training with her love of chemistry and creation, Christi and Highline have achieved nationwide and even international recognition in the years since it opened.

9.    These principles are embodied in the Highline name. To protect that name and the brand it represents, Highline sought and obtained a federally registered trademark, HIGHLINE, U.S. Patent and Trademark Office Registration No. 7170816 (the "Mark") for "Alcoholic beverages, except beer; Distilled spirits; Whisky."

10.    Highline continued to protect its brand by seeking trademark protection on specific representations of the HIGHLINE name, including a pending trademark application and the term stacked as shown below for "Alcoholic beverages, except beers; bourbon whisky; spirits; whiskey; distilled spirits" (Serial No. 98598979) and HIGHLINE for "Wine" and "Beer" (Serial No. 97779203):

HIGH
LINE

11.    These protections are essential to ensuring the recognition for the Highline brand both now and in the future.

**B.    The Distilling Industry and its Products**

12.    The modern spirits industry is founded on a series of related products, all of which begin with a basic distilled spirit. Many companies in distilling create a base spirit, whether it is gin, rum, tequila, whiskey, vodka, or some other distilled spirit, and then combine that spirit with another drink to create a cocktail for consumption. These combinations can be sold in tasting

rooms as poured cocktails or can be bottled or canned and sold in bulk at stores, sometimes called Ready-to-Drink cocktails or Alcopops.

13.     Highline was founded on this model. It started by focusing on its spirits distilling, creating award-winning gin, whiskey, vodka, rum, and tequila spirits. It serves poured cocktails in its tasting room as a compliment to these spirits, and as part of a testing program for Ready-to-Drink and Alcopop recipes. And it is preparing to distribute its own Ready-to-Drink and Alcopop beverages, having selected recipes, developed packaging, and begun regulatory approvals.

14.     Highline has expended substantial time, money, and resources in the marketing, advertising, and promotion of its products sold under the HIGHLINE Mark, including through extensive internet, print, and physical marketing, advertising, and promotions.

15.     Because of these efforts, consumers have come to look for the HIGHLINE Mark to identify Plaintiff's product in the market.

**B.     Defendant Vosa's Unlawful Use of the Mark**

16.     Defendant Vosa was founded in 2020 as a venture-capital backed, Ready-to-Drink cocktail company. Originally, none of its beverages were marketed or sold using the name HIGHLINE.

17.     In May 2023, Vosa began marketing and selling one of its premium Vodka Cocktail Ready-to-Drink beverages (the "Vosa Products") using the name "High Line" (the "Infringing Mark"). Then, in late 2023, Vosa reached a deal to bring in Kate Upton as co-owner to promote the brand. Backed with venture capital money and a significant social media presence, Vosa's products and presence began spreading throughout the United States.

18.     Vosa did not seek Highline's permission to use the Infringing Mark, nor did Highline ever authorize or consent to such use.

19.     Despite Vosa's awareness of the U.S. trademark system, and despite Highline's registered trademark rights in HIGHLINE, Vosa adopted the Infringing Mark for use on its Vosa Ready-to-Drink beverages.

20.     Defendant's use of the Infringing Mark in association with the advertising, marketing, and sale of alcoholic beverages, including distilled spirit product lines is likely to cause confusion in the marketplace with Highline's Mark.

21.     The Infringing Mark is highly similar, in fact it is nearly identical, in appearance, phonetic pronunciation, sound, and overall commercial impression to Plaintiff's Mark.

**C.     Defendant's Knowledge of The Mark and Prior Conduct of The Parties**

22.     Highline first became aware of Vosa's use of the Infringing Mark in March 2024 when an employee saw Vosa Products at a Total Wine location in Michigan.

23.     Shortly thereafter, on May 2, 2024, and hoping to engage with Vosa before the key summer season for Ready-to-Drink beverages, Highline sent a demand letter to Vosa objecting to Vosa's use of the Infringing Mark on the Vosa Products.

24.     A few days later, Vosa responded refusing to cease and desist its use of the Infringing Mark.

25.     On May 16, 2024, Plaintiff attempted again to request Vosa's compliance with its demand.

26.     On May 30, 2024, Vosa responded, again, refusing to cease and desist use of the Infringing Mark.

27.     To date, despite several attempts by Plaintiff to continue a dialog, Vosa has not complied with Plaintiff's demands.

28.     As a result, Defendant acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

**D.      The Prior Lawsuit and Settlement**

29.     On March 10, 2025, Plaintiff sued Vosa alleging 1) trademark infringement under the Lanham Act (15 U.S.C § 1114); 2) unfair competition/passing off under the Lanham Act (15 U.S.C § 1125); 3) unfair competition (MCL § 445.903); and 4) unfair competition under Michigan common law. (1:25-cv-00266, PageID.1-69.)

30.     On October 31, 2025, Highline and Vosa entered into a Settlement Agreement. (Exhibit 1.)

31.     Under that Settlement Agreement, Vosa agreed to pay Highline a total of $65,000 in monthly installments beginning on November 3, 2025, and continuing the first business day of each month thereafter. (Exhibit 1, § 1.)

32.     The Settlement Agreement further provides that, if Vosa fails to timely make an installment payment, Vosa is in material default, subject to a cure period ending on the tenth calendar day following the missed due date (the "Grace Period"). (Exhibit 1 § 4(b).)

33.     As the consequence of an uncured missed payment, Vosa expressly agreed as follows: If any Installment Payment is missed and is not timely cured within an applicable Grace Period (if available), Vosa consents to the entry of the 'Consent and Stipulated Permanent Injunction' . . . for the then-unpaid balance, together with interest at twelve percent (12%) per annum simple interest [] from the applicable default date through entry of judgment, and reasonable costs of entry (and, as provided in Section 4(g), reasonable attorneys' fees in any action to enforce this [Settlement] Agreement. (Exhibit 1 § 4(d), emphasis added.)

34.    The Settlement Agreement provides that in the event of a Default, Highline "shall be entitled to recover from the Defendant(s) all reasonable attorneys' fees and costs to cover such fees and costs incurred by Plaintiff in connection with enforcing such Default of this Agreement." (Exhibit 1 § 4(g).) These permissible amounts include the "acceleration, preparation and entry of the Consent Judgment and Stipulated Permanent Injunction in Exhibit A" and "any motion practice, evidentiary proceeding, or other undertaking required to enter and enforce the Consent Judgment and Stipulated Permanent injunction, including enforcement proceedings, appeals, or post-judgment proceedings." (Exhibit 1 § 4(g).)

35.    The Settlement Agreement also permits Highline to file the agreed Consent Judgment, together with an affidavit from counsel attesting to the occurrence of nonpayment, the amount due, and compliance with any notice requirements. (Exhibit 1 § 4(h).) Before filing, Highline must provide Defendant with a courtesy copy of the affidavit and proposed filing at least twenty-four hours before submission to the Court. Notices were permitted via email with a PDF attachment and a same-day courtesy copy by overnight courier to the addresses in the agreement. (Exhibit 1 §15(a).)

36.    After executing the Settlement Agreement, the parties stipulated to dismiss the litigation without prejudice. (1:25-cv-00266, PageID.786.)

37.    Vosa has made only six of the required twelve installment payments, totaling $32,500.02, corresponding to the payments due in November 2025, December 2025, January 2026, February 2026, March 2026, and April 2026.

38.    Vosa did not make the required pay on May 1, 2026.

39.    Vosa did not may the May 1, 2026 payment within the applicable Grace Period.

40.    $32,499.98 of the $65,000 Settlement Payment remains unpaid.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
### (15 U.S.C § 1114)

41. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

42. Defendant has adopted in commerce a mark identical to or confusingly similar to Plaintiff's Mark, HIGHLINE, with full knowledge of Plaintiff's superior rights, and with full knowledge that their infringing use of Plaintiff's Mark causes confusion, mistake, and/or deception.

43. Defendant has infringed Plaintiff's HIGHLINE mark (Reg. No. 7170816) by using a mark in commerce that is likely to cause confusion, or cause mistake or deceive and/or selling, offering for sale, distributing, and/or advertising products bearing a mark likely to cause confusion, or cause mistake or deceive as to their origin.

44. The knowing, intentional, and willful nature of the acts renders this an exceptional case under 15 U.S.C § 1117(a).

45. As a direct and proximate result of said infringement by Defendant, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial. Plaintiff is also entitled to Defendant's profits attributable to the infringement and is also entitled to its attorney fees and costs as according to law.

46. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's Mark. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

## COUNT II
## UNFAIR COMPETITION UNDER THE LANHAM ACT
### (15 U.S.C § 1125)

47.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

48.    Defendant's manufacturing, selling, offering for sale, advertising, and/or shipping of the Vosa Products will likely cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's products in violation of 15 U.S.C § 1125(a).

49.    Plaintiff's consumer goodwill is of enormous value, and Plaintiff is suffering and will continue to suffer irreparable harm if Defendant's unfair competition is allowed to continue.

50.    Defendant's unfair competition and passing off has continued and will likely continue unless enjoined by this Court.

51.    The knowing, intentional, and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C § 1117(a).

52.    As a direct and proximate result of Defendant's acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of infringement and unfair competition by Defendant harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendant.

53.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to engage in the unlawful acts. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

## COUNT III
## UNFAIR COMPETITION
## (MCL § 445.903)

54.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

55.    Defendant, without Plaintiff's authorization, has used the same or confusingly similar trademark intended to cause, has caused, and/or is likely to cause confusion, mistake, or deception among consumers between Defendant's products and Plaintiff's products.

56.    Defendant's actions described above constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of Michigan's Consumer Protection Act, MCL § 445.903.

57.    Defendant's wrongful acts alleged herein have permitted and/or will permit Defendant to earn substantial revenues and profits on the strength of Plaintiff's extensive advertising, consumer recognition, and the goodwill associated with its products.

58.    By reason of Defendant; wrongful acts alleged herein, Plaintiff has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendant's products are affiliated with, sponsored by, approved by, or originate from the Plaintiff.

59.    As a direct and proximate result of Defendant's acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts unfair competition by Defendant harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendant.

60.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no

adequate remedy at law. Unless enjoined and restrained by this court, Defendant will continue to engage in unfair competition. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

## COUNT IV
## UNFAIR COMPETITION
## (MICHIGAN COMMON LAW)

61. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

62. By its conduct, Defendant has unfairly competed with Plaintiff. Plaintiff has no adequate remedy at law for Defendant's continuing acts of unfair competition.

63. By reason of Defendant's wrongful acts alleged herein, Plaintiff has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendant's products are affiliated with, sponsored by, approved by, or originate from the Plaintiff.

64. As a direct and proximate result of Defendant's acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of unfair competition by Defendant harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendant.

65. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this court, Defendant will continue to engage in unfair competition. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

## COUNT V

## BREACH OF CONTRACT

66.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

67.     The Settlement Agreement is a valid contract enforceable by Plaintiff against Defendant.

68.     Defendant has breached the Settlement Agreement by violating at least section 1 of the Settlement Agreement by failing to pay the amounts due and owing under the Settlement Agreement.

69.     Defendant's breach of the Settlement Agreement has caused Plaintiff to incur damages in the amount of at least $32,499.98, plus interest at the rate proscribed in the settlement agreement.

70.     Defendant's breach of the Settlement Agreement further entitles Plaintiff to obtain its reasonable attorneys fees and costs incurred in enforcing the Settlement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

a)      Judgment against Defendant and in favor of Plaintiff on all counts;

b)      A determination that Defendant is liable to Plaintiff on all Counts;

c)      Requiring Defendant, pursuant to the Lanham Act, to deliver to Plaintiff or destroy its entire inventory of infringing products bearing or infringing the Mark;

d)      An award of damages under 15 U.S.C § 1117 for the Lanham Act violations in an amount equal to (i) Defendant's profits , (ii) damages Plaintiff has sustained due to Defendant's wrongful conduct, and (iii) costs of this action;

e)      An award of Plaintiff's damages trebled plus the costs and attorney fees under 15

U.S.C. § 1117(c), and/or alternatively, Plaintiff's actual damages and/or profits of Defendant that are attributable to the violations alleged herein pursuant to 15 U.S.C § 1117(a);

f)  An accounting of Defendant's profits;

g)  A determination that this case is "exceptional," under 15 U.S.C. § 1117(a);

h)  An award of monetary damages to Plaintiff from Defendant incurred as a result of its breach of the Settlement Agreement;

i)  An award of damages adequate to compensate Plaintiff for the actionable conduct of the Defendant, including, subject to the principles of equity, recovery by Plaintiff of (1) Defendant's profits, (2) any damages sustained by Plaintiff, and (3) the costs and disbursements of this action;

j)  An award of damages arising from Defendant's unfair competition under common law, punitive damages, and attorney fees to the extent permitted by law;

k)  Award Plaintiff all costs and fees, including attorney fees, incurred in bringing this action as provided under the Settlement Agreement;

l)  An award of interest, including prejudgment interest on the foregoing sums; and

m)  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:  /s/ *Joseph M. Infante*

Joseph M. Infante (P68719)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, Michigan 49503
(616) 776-6333
Infante@millercanfield.com

Anita C. Marinelli (P81986)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
Marinelli@millercanfield.com

Dated: June 4, 2026

- 14 -